We'll hear argument first this morning, first this term, in Case 13-1067, OBB Personenverkehr v. Sachs. Mr. Barson-Bruio. Mr. Chief Justice, and may it please the Court, this personal injury action is based upon an accident that occurred in Austria. If this Court agrees, there's no need to reach the other question related to agency, so I will start first with the based-upon issue. In Nelson, this Court set forth a framework to analyze the based-upon question. And this Court held that courts must begin their analysis by identifying the particular conduct on which the action is based. The decision uses words such as basis, foundation, and gravamen. So here we should begin by identifying the particular conduct on which the action is based. Ginsburg. In that case, there was a distinction between State activity, that is, police activity, and the commercial activity in hiring the plaintiff. Here, I think it's conceded that the activity, running a railroad, that's commercial. So we don't have the commercial State action division. Yes, Your Honor. That's correct. Here there are two alleged commercial activities. One of them is the sale of the ticket in the United States, and the other one are the accident omissions that resulted in the accident in Austria. So what I would suggest is that we look at the complaint and see what it is that the plaintiff has alleged. Just as a matter of background, suppose a hypothetical case, no foreign sovereign, it was a private corporation in Austria. Would there then be jurisdiction under the due process clause in your view? You don't have to prevail on that issue, but as a background issue, what do you have a position? Our position is that if OBB was a private entity, there would not be jurisdiction over OBB, there would not be general jurisdiction after this Court holding in Daimler, and there would also not be jurisdiction. And Daimler is your best case for that proposition? Yes, Your Honor. Do you think that it's the same test? In other words, is the test a specific wording if this were a foreign corporation? I don't believe so, Your Honor, and let me explain, if I may, why not. Congress could have chosen the wording in the personal jurisdiction analysis and the case law, but they decided on another phase, based upon instead. So I believe that what this Court needs to do is give some guidance on that. Well, but why — I mean, it doesn't seem to me that that wording is very different from the wording that we've used in specific jurisdiction cases. The wording here is based on, we've used a rising out of, sometimes we've used related to. In some respects, I mean, it's pretty clear that the FSIA is meant to ensure that when a foreign government is acting as a commercial actor, it gets treated like a foreign corporation. And the language here is very similar, right? There's the insistence on a sufficient contact, a minimum contact, and then there is the insistence on a particular kind of relationship between that contact and the claim. So it seems — I guess the question is why should we think of these two questions as at all different? And I don't know, by the way, I mean, that it would hurt you if they were the same, because it might just be there would be no specific jurisdiction here, you know? But I guess I'm having trouble thinking why it is that there would be a different test. The reason why is because the FSIA takes place of both the subject matter jurisdiction analysis and the personal jurisdiction analysis. Both are combined into one test. So although I would agree, certainly, that some aspects of the personal jurisdictional analysis are part of that test, it goes beyond that. It also goes into subject matter jurisdiction, which is a different set of policy determinations that Congress made that are in some way overlapping of the personal jurisdiction questions, but I don't think they are completely alike. Sotomayor, I'm sorry. I don't even understand why we're talking about based upon. As Justice Ginsburg said, there's no dispute here that whether the based upon is this Both of them are commercial activities. Isn't the work in substantial contact with the United States? Isn't that what we should be looking at instead? Was this commercial activity substantial enough? The operation of the train and the ticket sale here, did it have a substantial contact with the United States? There's a three-step analysis, Your Honor, in Nelson. First, you have to identify the particular conduct, the actions, not the causes of action, which is what the Enfant court did. They focused on the legal claims. This Court said you have to focus on the acts. Here, the acts. Sotomayor, we did that in the context of deciding when something was a sovereign act as opposed to a commercial act. We know this is a commercial act. So I'm just confused. Why isn't the work, why shouldn't the work be done by substantial contact with the U.S.? It's a three-step analysis. First, you identify the activity. Secondly, you decide whether it is commercial or not. Whether it's commercial or sovereign. So there are three steps. What I'm saying is that the Ninth Circuit erred. They didn't look at the conduct first. They looked at the legal claims. If you look at that. Sotomayor, even if they had looked at the conduct, it's commercial. It's commercial. But if you look at the conduct and you identify it as the accident in Austria, which is what the plaintiff claimed, in JA 15, paragraphs 3 to 8, they alleged that there was an unsafe boarding platform, a gap at the platform, et cetera, et cetera. All of these things happened in Austria. Alito, how do you propose that we determine whether it's based on commercial activity? Take their failure to warn claim. Why isn't that based on something that occurred in the United States? You're just asking us to step back and say, well, in that case, we really think they're just trying to they have a tort that occurred in Austria, a negligence tort that occurred in Austria, and they're just trying to plead around it with these other claims? Well, there's no allegation in the complaint that the failure to warn was something that happened in the United States. It's found in the same set of paragraphs, 3 through 8, that relate to the acts and omissions in Austria. It also would make no sense to argue that there was a failure to warn in the United States, because that would mean that the Europass itself would have to warn about all conditions at hundreds of potential railroad stations in Europe. Well, it might be a claim that couldn't prevail, but why does that answer the question? Well, the failure to warn that's alleged relates to the facts that arise in Austria. And therefore, the cause of action arises in Austria, because that's where the acts or omissions occurred, if one looks at what's alleged in the complaint itself. Would you agree, and as you've been doing, take out the agency question, but would you agree if what had happened here was that the ticket was not honored? You know, the plaintiff bought a ticket and the ticket was not honored, and the suit was where the ticket was purchased, would you agree that that's based on? If this was a breach of contract case, and the breach, the allegation of the breach was that when the Respondent showed up, they did not honor the ticket, that would be based upon an activity in Austria, because it's in Austria that that ticket was not honored. Kagan In Austria, even though she bought the ticket in the United States, you think even the breach of contract case could not be brought in the United States? Correct. Because the wrongful act, the breach, arises in Austria. Why is that where? Kennedy Suppose we disagree with that. I'm sorry? Suppose we disagree with that answer, do you lose the case? I'm sorry? Suppose we disagree with the answer that you gave to Justice Kagan. Suppose we disagree that that suit has to be in Austria. Can you still prevail on the facts of this case? The hypothetical was the ticket is not honored. Suppose we disagree with your answer. Can you still prevail on the facts that it did in fact occur in this case? Yes, but I would still prevail based on the agency argument that we have presented. But could you go back and explain to me what the other argument is? I'm sorry. You'd lose on the other point. You acknowledge that you would lose on the other point if that hypothetical came out the other way? No, I do not. I believe my – let me clarify, Your Honor, if I may. My answer to Justice Kagan was that I believe that a breach of contract claim for dishonor of the ticket in Austria has to be brought in Austria. Because? Because that's where the breach occurred that gives rise to the cause of action. Justice Kennedy said to me, suppose that we disagree with you, can you still win the case? And my answer was I could still win, I believe, under the agency alternative argument. What about a part? Not under the argument you're first making. Not if the Court ruled against me, no. But I believe that's the case. On that hypothetical, why? Why? I mean, couldn't you make the argument that the question ought to be decided not by where the contract was breached, but where the contract was made? I mean, we could hold that, and that would not affect your case. That's true. I do not believe that a breach of contract claim under the fact scenario that you provided, Your Honor, would give rise to a claim in the United States, because the breach happened – would have happened in Austria. Counsel, I want to come back to Justice Kagan's speculation of whether basically what it's based on is nothing more than due process. It seems to me that the definition of commercial activity carried on in the United States by a foreign State is the due process test. The definition is a commercial activity carried on in the United States by a foreign State means commercial activity carried on by such State and having substantial contact with the United States. That sounds to me like the due process test. But what is required here is not just a commercial activity carried on in the United States. It has to be based on a commercial activity carried on in the United States. And it seems to me that is something added to the constitutional test. Yes, Your Honor. And that's why I started my discussion by referring to this holding, the holding of this court in Nelson, which has to look at the particular conduct. The particular conduct, that issue, is not the sale of the ticket. It's the acts and omissions that resulted in the accident in Austria. It is not the sale of the ticket. Roberts, what if there are acts or omissions in two? Let's say you have a flight from New York to Vienna, and in New York, someone negligently sets or whatever they do with the landing gear, okay? So then the plane takes off, and then in Vienna, because of the negligence in New York, it's a rough landing, somebody gets a concussion. Where is the gravamen of the action in that case? Can you bring that in the United States? Potentially, you could bring it in the United States. And the difference between your scenario and this case is that in that scenario, the service was provided starting in the United States. There is contact with the United States because the foreign airline came here and conducted a commercial activity in the United States. That's what's different about this case. Ginsburg. If the negligence occurs in one place and the impact is the other, you could bring the suit in either place as far as our notions of personal jurisdictions. Either injury in the State or conduct in the State causing injury outside it. Those are typical long-arm bases of jurisdictions. So the Chief's hypothetical, where the negligence occurred in the United States, that, you agree, would be a case that could be brought in the United States because the relevant conduct occurred there.  In that case there was a negligence. Well, correct. I don't understand, then, what gravamen means in the Nelson decision. Gravamen means one place, right? Correct. Or do you think you could have a lot of different — I mean, if it's the gravamen of your complaint, I think you have to choose, don't you, one or the other? Well, I would — I would understand your example, Chief Justice, to mean that the act that caused the injury was whatever they didn't do upon takeoff to the plane or any — as I understood your example. The cause of that injury was in the United States. So can you have more than one place under the based-upon analysis in Nelson, or has you — have you got to decide there's only one place where you could bring the action? Well, the airline example — and this is something I thought about — it's somewhat a complicated example because we have conventions, international treaties, that deal with airline cases. I would imagine that, theoretically, there could be one more — more than one location, but not on the facts of this case. Well, in the Chief Justice's example, he — he stated that there was negligence in the United States. But what if there's no evidence of that? There's a — there's a problem with the landing gear when the plane lands in Austria, and the claim is that there was a failure to inspect in the United States or a failure to do proper maintenance in the United States. Would that be different? That may be different, again, because the transportation was provided from the United States geographically. There's no doubting that question, that commercial act was carried on in the United States by the airline. And that's different here. Well, I suppose it's — it's proper to say that where you have negligence that causes an injury, the — the complaint is based on both. You — you don't have liability without the negligence. You don't have liability without the injury. So why can't you say, based on — in that situation, would enable either one to — to sustain the cause of action? In the airplane example, perhaps either jurisdiction. In this example, if you look at the complaint and we're guided by the allegations of the complaint, it is — the acts are only alleged to have happened and the omissions to have happened. Getting back to our earlier discussion questions from me and from Justice Kagan, it seems to me you have to say the due process analysis is insufficient under this statute because — then fill in the blank. And Justice Scalia was asking you the same question. Yeah. One answer might be because otherwise there would be no necessity for a statute. Due process applies anyway. But the counterargument is, well, there has to be, because the statute makes the distinction between sovereign and commercial, and so it has a real purpose. Right. The due process analysis is incorporated into the statute, but it's not the only thing to think about. For example — You did answer, I think, you did answer, rendering Justice Kennedy's question somewhat academic, that there would be no specific jurisdiction in the United States if all that happened here was a ticket purchased from an agent where the injurious conduct all occurred abroad and the railroad operates solely abroad. You answered that whether it were the due process-specific jurisdiction inquiry or the Foreign Sovereign Immunities Act, the answer would be the same, that the ticket sale in the United States was not enough. Yes, Your Honor. But, of course, my question was, suppose that the due process analysis is sufficient to sustain jurisdiction, then what? Then does based on still have a separate meaning, has a separate requirement that has to be met, and has not been met here? And if so, why? It has not been met here because, from a general jurisdictional perspective But not general jurisdiction. I was really talking about specific jurisdiction. And, of course, Justice Scalia is absolutely right with respect to general jurisdiction that all you look at is the contacts. But with respect to specific jurisdiction, this is a company that doesn't have pervasive contacts. It's critical to the due process analysis that there be a relationship and a real relationship between the particular contact with the United States and the lawsuit in the exact same way that this statute focuses on. And so, again, I don't know if it hurts you. It might be, as Justice Ginsburg says, that there wouldn't be some specific jurisdiction here for a corporation. But why shouldn't we treat those two things exactly the same way? There's, if I may answer that, two parts of your question. First, there's no specific jurisdiction if OBB were a private entity because the Respondent is not suing for breach of the ticket. It's not alleging that it was not on her. She is suing for something that happened in Austria. The specific acts happened outside of the United States. Kagan. Kagan. And you can make the exact same answer in the completely private context. And you could well be right, and I want to ask Mr. Fischer about that. Right. But it's not an answer about why the tests should be different. The tests, the tests — my belief is that the tests should incorporate due process analysis, but because we are also dealing with subject matter jurisdiction, which is a different analysis than personal jurisdiction, there are other policy considerations. The policy considerations, decisions that Congress made, were based on territory. If one looks at the first, the second, and the third clause, they're all territory-based distinctions. In the case on Miranda Hess, this Court held that tort actions are meant to be encompassed by the second section of the exception, the noncommercial torts exception. That requires that the tort happen in the United States in order to be — to have subject matter and personal jurisdiction. It wouldn't fit here. Justice Ginsburg referred to direct effects. That would come under the third clause, which deals with commercial activity outside of the U.S., again, a territorial line having an effect here. The first clause draws the territorial line here and says that commercial activity has to happen in this side of the line within the United States, and that's what we don't have here. I would like to — Scalia, what provision are you referring to? I'm referring to the first clause of the commercial activity exception, that it requires that the commercial activity be conducted, carried out in the United States. That means that within the territory of the United States. And I reached that conclusion by comparing it to the third clause, which refers to commercial activity outside of the United States having a direct effect in the United States here. Now, if I may just say one point about agency. There's no dispute here that if the definition in the Act applies, R.P.E. doesn't fit within it. Now, this Court has recently held that we are guided by the language of the statute. I understand that arguments have been made by my colleagues and also by the Ninth Circuit that there's a difference between invocation of immunity and attribution. This is the point I want to make. Section 1604 is the invocation section. That's the section that states that certain people, those defined as the foreign state, can invoke immunity. Section 1605 is an attribution section. It says whose acts deprive you of immunity. And because foreign state is a defined term, we are limited to the limitations in the FSIA. In the alternative, if this Court were to move away from the definition, I believe we would all agree that there has to be some element of control. The test that this Court develops for agent has to have either the degree of control in BANSEC or something lesser. But all agency law requires control, and that's where the en banc Court missed the mark. They didn't require any control. And if one requires control, it has to be reversed because there was no control here. If there are no pending questions, I would appreciate reserving the balance of my time for rebuttal. Thank you, counsel. Mr. Kneedler. Mr. Chief Justice, and may it please the Court. I'd like to start with the point about whether the FSIA simply incorporates due process standards, and we think it does not. It contains its own statutory terms which require interpretation. Congress did not simply incorporate the D.C. long arm statute or due process principles or phrase the statute in that way. It enacted specific statutory terms, and it's different. So is it the based upon language or the substantial context? It's both. It's both, and in the United States, which is an important point I want to make. One of the reasons it's very different from just due process is because this the FSIA governs subject matter jurisdiction, personal jurisdiction, to be sure, but based upon a determination of immunity of a foreign State. And it does that by drawing, as was mentioned before, a strict territorial line that runs throughout all the exceptions. For example, the intentional the tort exception applies only to torts in the United States, and the property exception concerns property in the United States. And the focus of the commercial activity exception is also at least under Clause 1, well, all of them, but Clause 1 is commercial activity in the United States that also has a substantial connection, but the action has to be based upon, as Justice Scalia pointed out.  Kagan. Kagan. But how is based upon different from the language we routinely use in specific jurisdiction cases? In other words, it just seems as though Congress, in line with its objective of treating foreign governments engaging in commercial activity in the same way as they would be treated in the foreign corporations case, in line with that objective, used language that's virtually synonymous with the language that we use in specific jurisdiction cases. But it did it in the context of a statutory structure that is designed to protect foreign sovereign immunity and not to draw U.S. courts into what could be very sensitive international questions of having U.S. courts pass judgment on what happens in a foreign country. Well, it did so in the context of distinguishing between commercial activity and sovereign activity. In Nelson, actually, the pertinent paragraph in Nelson that discusses based upon, as counsel pointed out, the Court said you start with what is the conduct that the suit is based upon. And the Court said the conduct there was the conduct that took place in Saudi Arabia. And then it had a discussion that said to be sure there was recruitment that preceded that, and that recruitment put the employee in the position to be in the hospital in Saudi Arabia where the conduct occurred, but the focus was on, as the Court said, those torts in Saudi Arabia, not the antecedent commercial activity in the United States. That discussion in the Court's opinion preceded its discussion of the distinction between commercial activity and sovereign activity. It had to do with what is the focus of the claim, and there the Court was focusing on tort claims that happened outside the United States. And we think it's very important in this case to distinguish between tort claims and contract claims. Alito, if you have a tort claim that has one element in the United States, how do you how does the Court determine whether the gravamen of the claim is in the United States or elsewhere? I think focusing on what the defendant's conduct is that actually caused the injury. And here, the only difference between this case and Nelson is the argument that the purchase of the ticket, which is the, by the way, the only commercial activity that was relied upon below, the Ninth Circuit says this at Pet. 13 and footnote 4, Respondent is now trying to broaden that into the entire operations of the railroad, which would actually be an assertion of general jurisdiction. Anything that would arise in the operation of a railroad in Austria could be the subject of a suit if it was deemed to have substantial connections to the United States. Kennedy, if you want to get based upon a separate substantive effect in this statute and so that it means something more substantial than mere due, than what would suffice for due process, what body of law, case law, do we look to? If I want to find out about based on what kind of cases am I supposed to read? Well, in Nelson itself, I think, is very instructive on this because, first of all, the Court in Nelson did not describe what it was doing as simply applying due process standards. It was applying the statutory terms. And, again, it focused on the particular conduct, and this goes to Justice Alito's question as well, it focused on the conduct that really caused the injury, which in that case was the intentional torts that happened in Saudi Arabia. Kagan in my contract typo, if the suit was a breach of contract action, do you think it would be based upon? Just a straight, like, you don't you didn't honor my ticket? Kneedler, On a contract claim, I think that there may well be a contract claim here, but I think it's important to recognize that a breach of contract claim, just because there is some connection with the United States, does not automatically even for due process purposes, some connection of a contract to the forum is not enough. The Court made that point in Burger King about contracts, which was discussed in the Court's Walden v. Fiori case. Ginsburg, Mr. Kneedler, before you finish, you bring up the interest in relations with other nations. Do you know, I mean, there are other nations that have similar legislation to the Foreign Sovereign Immunities Act. Do we know how this case would come out, say, in Canada, Germany, or France, under  Kneedler, The European Convention provides for jurisdiction over tort claims, which this basically is, only with respect to torts that arise in the territory, which is the case here in our own tort exception, which is an important, going back to Justice Kagan's question, an important reason why this is different from due process. Tort claims under the FSIA, under Exemption 5, Paragraph 85, arise only when the tort occurs in the United States, and even business torts. The House report refers to business torts in the United States, because there was a — Congress was drawing a territorial line. And we think that's the case. Breyer, you said that this injury, the claim that's pursued against here, the facts that underlie it, are based upon activity that took place in Switzerland. Kneedler, Right. Breyer, in Austria. Kneedler, Right. Breyer, And so they wouldn't. Kneedler, Right. Breyer, Under their law. Kneedler, And that's the case. Breyer, Is there any indication — I saw none in any of these briefs — that there's any country in the world that would reach a different result? Kneedler, I — as far as — Breyer, With lawyers on both sides, and I'm sure one of the lawyers would have told us if they found a country in the world that would have reached a different result. Kneedler, And this — the same general point is true in the U.N. Convention on Immunity with respect to tort claims. Kagan, Mr. Kneedler, how about there is a contract claim in this lawsuit? So there's a — it's a kind of warranty of fitness kind of claim? How — how about that? Why — if you think that the — let's assume that the contract claim, which is like you didn't honor my ticket, that there would be personal jurisdiction over, how do we separate out the — the warranty of habitability or fitness claim? Kneedler, Because I think — I think that's very parallel to what this Court confronted in the Nelson case, where the — the Court said the failure to warn — there was a claim there, too — a failure to warn about the hazard — about the potential tort. And the — and the Court said it would not recognize jurisdiction by that sort of feint of language. You can't recharacterize something that is basically a tort abroad by claiming that there was a failure to warn about the tort. We think that's true here. Kagan Is that a typical thing or an unusual thing to do in jurisdiction cases? In other words, to say, we're just not going to look at this claim by claim. We're going to ask about the whole gist of the lawsuit. Kneedler, We — we think that at least for tort claims, again, under our — our position, you look at the foundation of the claim, the gravamen of the claim, and applying that principle of tort claims anyway, it's proper to look about where — where the conduct occurred, the tortious, the injury-causing conduct occurred. And where the injury was felt. Scalia Pardon me? Scalia Is the based-upon language, does it identify a single place, or could it be based upon activity in two jurisdictions? Kneedler Well, it could be based upon activity in two jurisdictions. The House report describing this talks about commercial activities occurring in whole or in part in the United States. Scalia But not in the airline case. You would not say that the airline case, the gravamen, was a negligence in the United States in the injury when the plane landed. Kneedler I think, depending on where the tort occurred, it may — it may just be in the place where the — where the negligence occurred. But I do want to say that for airlines — Scalia It can't be both. Kneedler It could be — it could be because the question under the FSIA is whether you can sue in the United States. Whether you can sue abroad is not determined by based-upon language in the — in the FSIA. But with respect to airlines, those — those are covered by the Montreal Protocol, which provides a variety of jurisdictions for suits to be brought in. Roberts Well, you're not suggesting the result would be different if it were a boat, are you? Kneedler No. No, but I — the hypotheticals, a lot of them, the transporter had to do with the airline. Sotomayor If this was a private company, would there be jurisdiction here? If this were a private company, not the State, would there be jurisdiction here? Kneedler I think probably not, but I — but I think it's — I think it would be a good idea for the Court not to address the due process and just focus on the — on the statutory terms here, because the question of virtual presence, like purchasing a ticket on the Internet, can arise in all sorts of ways for due process purposes in private cases, and — and here we have a statute to focus on. Roberts Thank you, Mr. Kneedler. Mr. Fischer. Fischer Mr. Chief Justice, and may it please the Court, I'd like to start with Justice Sotomayor's question, which I think has been asked a couple of other times today, which is what would the answer be if this were a private defendant? And footnote 11 of our brief on page 33, we explain why the answer would be that there is no specific jurisdiction. And in the Gibson-Dunn amicus brief at pages 25 to 29, they give a fuller explanation. There's no response. Ginsburg Why? Why, Mr. Fischer? We — there's one contact with the United States. A pass is bought from a travel agent in Massachusetts, a pass covering 30-odd railroads. That's all that happened in the United States. All of the relevant conduct, the tortious conduct, occurred abroad. I don't know of a single case where we have said specific jurisdiction can be based on a connection that had nothing to do with the injurious conduct. Mr. Fisher But, Justice Ginsburg, I think there are plenty of cases that support the proposition that when a company markets and sells a product in a jurisdiction, that creates specific jurisdiction. That's what OBB did through its agent, RPE, is market and sell its product. I mean, let's assume this. Let's assume that I get a brochure from the Vienna Opera Company, and I send back the order form, I'd like to buy tickets, okay? Now, for sure, if the Vienna Opera Company refused to honor my tickets, I have a claim, and it arises out of the fact that they have marketed my tickets in the United States. But now they honor my tickets, and I go up the stairs and I slip in a puddle, and I injure myself. What does that have to do with the only contact that they've had in the United States? I mean, at that point, you're just saying it's a but-for test, and everything would be included. But I don't know of a sensible specific jurisdiction analysis that would run like that. Fisher I agree with everything you said, but this case is different, because our lawsuit is based on the duty of safe passage that gave rise in that sale, in that ticket sale. So we're suing based on the promise and the offer of the Japanese ticket. Breyer In the Austrian case of the opera, there is an implied warranty that the opera is fit for the purposes, the opera house is fit for the purposes which it serves, okay? Same thing. Fisher I'm not sure. Breyer Not too hard to draft that. Fisher I'm not sure. And if somebody did draft that, it would certainly be subject to a 12b-6 rule. Breyer What's the difference between saying that they have to warrant their product, which is an opera house, to be safe, to say that they have to warrant their trains safe for passage? I can't see a difference. And it seems to me it's very normal in a contract to say that the seller of the product is implicitly warranting fitness, isn't it? Fisher Well, so all I can say is in this case, we're suing on the exact warranty that gives rise from this ticket sale. Justice Breyer, and I think this is the problem. Breyer That's the problem. I take it to go back to the questions you were asked from your answer. You have found no case in any country where a waiver of sovereign immunity based on commercial activity supports you. And if so, what is that case? Switzerland and Britain, or rather Netherlands, say no. The EU treaty says no. The U.N. charter says no. And they have all these lists of language which, while not absolutely against you, leans against you. So I want to know what is there in the law of sovereign immunity particularly that argue leans in your favor? Fisher So, Justice Breyer, to let me be clear about what is and is not in that brief. There are no cases that I don't think any party has cited. What that brief says is that based on the language in various conventions, that this claim wouldn't be able to be brought somewhere else. But the language in those conventions are things like arise under, based upon, and so you basically end up in the same situation as you are here, which is having to decide whether this claim can be brought. Remember, that brief also alleges, and it actually spends more time alleging, that there is no proper principal-agent relationship, which I think is, the Court has probably realized, is not a very credible argument. So I think you should be careful about putting too much weight on a brief that simply cites some treaty language. But I think the point I want to make in this, for the hypotheticals and to bring it back to my case, and I also tie in the contract. Breyer But I'm taking your answer to my question being, we have none. Fisher We have none and they have none. I have not found any more in the case.  All right. Okay. All right. Fisher You can ask him on rebuttal. Sotomayor Could you tell me your adversary claims, you've been trying to change what your claim is. Is it based on the ticket sale or is it based on the operation of the train? Fisher I think the better reading of the word activity in the statute, for the reasons we describe in our brief, is the overall integrated activity of running the railway train enterprise, which includes selling the product and delivering the product. Breyer I see our interest, but I'm thinking there are 190-some-odd countries in the world. Many of them do have governments that run various kinds of enterprises. When they come to the United States, perhaps not being totally conversant with American law, they might think, if my commercial activity in the United States really gives rise to some problem in the United States, I expect to be sued. But where what really gives rise to it, you see I have to use language like that, takes place in my country, I expect it will be my courts that will deal with it. Fisher Because up until this point, the law in the lower courts, the D.C. Circuit and the Second Circuit, most specifically, have held that in this exact situation there is  And Justice Breyer — Roberts Well, maybe if they had read our opinion in Nelson, that would have given them a good inclination to read sovereign immunity the way Justice Breyer suggests. Fisher No, I'm glad you asked about Nelson, Mr. Chief Justice, because the paragraph in Nelson that Mr. Kneeler is referring to is distinguishing sovereign activity from commercial activity. The court in Nelson did not have before it and was not concerned with the geographic nexus, and you know that because in that paragraph where it lists the things upon which the Nelsons claim is not truly based, it lists not only the recruitment in the United States, but the actual employment in Saudi Arabia. Breyer Well, he has a paragraph in Nelson, one sentence of which helps you, that he says the Nelsons were, you know, they negotiated with the Nelsons in the United States, they entered into a contract in the United States, and Nelsons are heard abroad. I take it that's the basis of it. And this helps you, but he says before, even taking each of the Nelsons' allegations about the recruitment and employment as true, those facts entitled the Nelsons to nothing under their theory of the case, which isn't contract. But he goes on to say it's these torts which happened in the hospital, abroad, and not the arguably commercial activities that preceded their commission that formed the basis for the Nelsons' suit. The basis for, you see. And so that's why I'm thinking it does not help you. Fisherman When the Court said the arguable commercial activities that preceded it, they were talking not only about the recruitment in the United States, but also the employment itself in Saudi Arabia. And they were distinguishing that from the police activity of seizing somebody and holding him in jail, which was what the case was really about, which were sovereign activities. So the Court in Nelson – Mr. Chief Justice, to be clear, I'm not saying Nelson supports me. I think Nelson simply doesn't answer this question, because you were concerned in that case with sovereign versus commercial, not geographic nexus. Roberts So in line with the discussion we had earlier about specific jurisdiction, is your argument that general jurisdiction is enough to support based upon, under the statute? Fisherman No, Your Honor. I think the Court I thought you talked about just all of the different commercial activities that the Austrian airline engaged in in the United States. And if it's all of the different commercial activities, that sounds like general jurisdiction, not the specific jurisdiction. Fisherman No, I think OBB is subject to jurisdiction under the – or I'm sorry, I should say does not have sovereign immunity under the FSIA for its train operation, of selling tickets and giving people rides on the trains. It wouldn't be subject to jurisdiction if it had some – if it had a mining enterprise on the side or something else that didn't even touch the United States. So the activity – Kagan Yes, but in point of fact, that's all OBB does. So effectively, your argument is an argument that OBB is subject to jurisdiction in a general jurisdiction kind of way with respect to everything that they do. And, you know, I think what the Chief Justice is suggesting is, like, that seems wrong. Fisherman Well, let me say two things, Justice Kagan. Thank you. I think that is the fairest reading of the statute, and Mr. Kneedler was talking about the House report. One of the examples in the House report of a commercial activity was running an airline. It's hard to distinguish running an airline from running a train system. So the terms of the statute do cover that. If Justice Alito may I just say one more thing to Justice Kagan? Which is, if you didn't agree that the term commercial activity covered the entire enterprise, then you would ask the question whether the activity of selling tickets is enough to create a based-upon argument in a specific jurisdiction, since we'd back to the conversation we've been having. Alito Suppose Ms. Sachs was Australian and she bought this ticket on the Internet in Australia. Would you say that there would be no sovereign immunity in a suit in the United  Fisherman Well, there wouldn't necessarily be sovereign – there may not be sovereign immunity under the terms of the Act, but obviously there would be a number of reasons why that case couldn't be brought to the country. Alito But there would be – there would not be immunity because it was based on the running of the railroad. Fisherman Right, which, on taking everything else the same, has substantial contact to the United States. But all the – all we're talking about in this case is immunity. Section 1330, where it has jurisdiction over foreign states, has – says that that jurisdiction has to be in personam, and obviously that would carry with it the requirements for in personam jurisdiction, which would require a contact in this country. And this is one thing I want to make sure is the Court understands to bring us back to the hypotheticals we were talking about earlier and to tie in the contract hypothetical. It's important for the Court to understand there are all manner of cases where a duty is created in this country by way of a foreign state's commercial activities and then injuries or breaches occur abroad. In fact, this is rather the oddball case. The more typical case is a high finance deal like the bonds case in the Weltover case, other kinds of international finance and loans. There are many employment cases where United States citizens sign an employment contract or are lured abroad, study abroad programs in the educational sphere, all kinds of situations where a duty is created in this country, but then all the events that the lawsuit turns out to be about happen abroad. And for decades. Ginsburg. Ginsburg. Ginsburg. You recognize, I think you recognize in your brief, that this, you can call it a question of first impression. You said, I believe, based on, the meaning of based on in this context is an open question. And if it is an open question, why should we allow a foreign carrier to be sued in the United States for acts or omissions overseas, and negligent conduct occurred overseas, when the only link, the single link, is a ticket, a pass, purchased from a travel agent in the United States? For all the reasons I was just saying, Justice Ginsburg, because it is utterly common for duties to be created in this country. Here, the duty of safe passage and of utmost care, and then the breach to occur abroad. My friend on the other side was correct to say this case is indistinguishable from contract cases. There are all kinds of cases where duties are created in this country and then breached abroad. And the lower courts have always held that the FSA has. If that's true, I don't understand why you answered my hypothetical question the way you did. Because in my hypothetical question, I thought you said that there would not be jurisdiction to sue in the United States when I slip and fall in Vienna. And you can make the same argument. Well, there was a duty created in the United States, and that's what I'm suing on. Fisherman, I think when I answered your question, I was imagining there wasn't a duty created. Maybe as Justice Breyer amended the hypothetical, there might be. Kagan. I mean, the only thing that's happened in the United States is that I've purchased a ticket there. That's what I've done. Fisherman, so I take it that your argument is that that purchase of a ticket gives rise to a duty, which is then violated when I slip and fall in another country. Fisherman, I would say if the plaintiff alleges that in the lawsuit, then there would not be sovereign immunity. And then Justice Alito is, I think as he was saying earlier, you'd have a, perhaps a very strong 12b-6 argument that there's no such State law claim that actually gave rise in that context. Roberts, if you get on the train in Vienna and you buy your ticket in Vienna and you get on the train in Vienna, there is on the train operator some duty of care, isn't there? Without regard to, in other words, there's nothing special about buying a ticket in the United States that gives rise to a unique duty of care that's any different from the duty of care that the railroad owes its passengers in Austria. Fisherman, I think that's right, Mr. Chief Justice, as long as you're talking about buying a ticket one place or the other. But of course, that's true of any seller of any product that they stand in, you know, they offer the same thing depending on where you buy it. But the critical thing is, where did they sell their ticket? They reached out to this country, and it is worth answering your question with this important point, which is the product that they sold to Ms. Sachs is not available to Austrian citizens. This is a specially tailored product available only to the U.S. Roberts, I understand, but there's nothing unique about the standard of care based upon whether it's a Eurorail pass or something else, is there? I'm just trying to suggest that you're putting an awful lot of weight on the standard of care created by the purchase of the ticket, and that's no different here or whether the ticket was purchased in Austria. It makes no difference to what standard of care she would allege if there were some other basis for jurisdiction in the United States. Fisherman, that might be correct, but it is important not to lose sight of the fact that she didn't buy her ticket there. OBB reached out into this forum, and just going back to this Court's ordinary due process cases, when a business purposefully avails itself of the protections and the opportunities of a particular jurisdiction. Ginsburg. The purposefully availed of test relates to specific jurisdiction, and there has to be an incident connecting. If there is that connection, then you must have an addition purposely availed of. But purposely availed of, standing alone, doesn't give you general jurisdiction and it doesn't give you specific jurisdiction. Fair enough, but you have to have a contact, and that's the substantial contact test in this case, in this case. Kagan. But you also have to have a relationship. And you have to have a relationship, which we do, because we purchased it here. Well, let's say that I don't accept that argument, okay? Let's just for a moment assume that on a straight negligence claim, the idea that a negligence claim arising from an accident in Austria arises, let's say I think it arises from the accident in Austria. It does not arise from the purchase of a ticket in the United States, okay? Yeah. Now, I guess there's still a question as to whether your warranty claims ought to be treated differently. And I take it what Mr. Kneedler has said about that is, no, they shouldn't be. That's just fancy pleading. It's just a way of converting a negligence claim into a contract claim. It's the same kind of thing that happened in Nelson that we refused to allow. Why isn't that right? It's not right because what you were worried about in Nelson is artful pleading to get around true sovereign immunity, in other words, to challenge sovereign acts dressed up as something else. Here there's no allegation that we're challenging sovereign acts. Everybody agrees we're challenging commercial acts. There's only the geographic nexus question. So we can plead a tort however we like subject to Rule 12b-6, which they can make on remand. And, Mr. Chief Justice, maybe I could turn back to one of your questions, because I think it further highlights the difficulty with the other side's test. It has to be enough for a duty to create a cause of action, we say, because otherwise you're left with this Graviman test. And either Graviman test has to mean one of two things. Either it has to mean that only one particular place can be the Graviman, which is the way I understood it from their briefing. But as the Court, I think, is figuring out from this argument, you get into all heaps of troubles with contracts, employment, all kinds of other things where the injuries occur abroad, and how on earth is the Court to determine where the Graviman is? On the other hand, if Graviman is sort of a gravipersons test, so that you can have many multiple places where a claim can be brought, then I'm at a loss to understand how is any improvement over the one element. Breyer. How does it work with a domestic contract, an ordinary domestic contract, entered into in Nevada, and the breach of the contract, which consisted of a failure, for example, to deliver goods to San Francisco, took place in California. And the lawsuit is brought in Nevada. How does that work? They move the law. How does it happen? Under due process, you would have jurisdiction in Nevada. I know that. But I mean, where does the, where does the. The Graviman? Yeah, yeah. Does that not come up as to what law applies, as to a factor in forum nonconvenience? No. No, it doesn't? How do you decide what law applies? The contract doesn't say. The most, there's a most significant relationship. Ah, most significant relationship, I see. And does it matter whether it's, is it to the formation of the contract or is it to the breach? I think it's sometimes one and sometimes the other, Justice Breyer. And what's the difference whether it's the one or the other? Pardon me? What's the difference? I mean, how does the Court decide? I'm simply pointing out that these kinds of problems are not unique to the international context. No, I think. They arise in many different legal circumstances, and courts have to decide what is the Graviman, and sometimes that's difficult and sometimes it's not. Am I right about that? I've never seen this term used in the case law, and I think the other side was correct when they answered. I don't know. You're the one who's, I'm not very knowledgeable, and I tend to believe you're more knowledgeable. Therefore, I'm asking you the question. Well, all I can do is honestly answer that I've never seen this test used in any choice of law analysis. I will ask that you answer that. If we're dealing with choice of law, is there any serious question of what law would govern the adequacy of OBB's boarding protocol or their platform design? Would that be any law other than Austria? Well, the Ninth Circuit held that California law applies in this case, and OBB has not challenged that holding. So as the case comes to this Court, California law applies for purposes of the one comment. Well, I'm asking you, never mind what the California court said. We have an accident in Austria, and it's based on the allegation is the boarding protocol was negligently designed or the platform, the space between the train and the platform, negligently designed. What law would govern whether that platform was negligently designed, whether the boarding protocol, operating protocol was negligent? In all candor, Justice Ginsburg, there would be a pretty good argument that Austria law should apply. And it is important for the Court to understand that simply holding that a suit under the FSIA can be brought in this country does not mean that U.S. law applies. There's a separate choice of law analysis that can be made. And so OBB had the opportunity to make choice of law arguments and has decided not to. But remember, they can do choice of law analysis not only in terms of ordinary common law principles that might apply in a court, but there's a number of ways that a defendant in an OBB's position can protect itself in a case like this. First of all, they can put a choice of law provision in the ticket or in the contract or whatever might be at issue. Second of all, even as to forum, forum selection clauses can be put into tickets like this in contracts. And in fact, they are. As the United States told the Court at the cert stage of this case, all of these tickets now are governed by a forum selection clause provision, so you'll never see a case like this again, not only in the railroad context, but even in the airline case. Ginsburg. And that works even though it's an adhesion contract and it's small print. Under Carnival Cruise Lines, this Court's decision, those kinds of forum selection clauses are perfectly enforceable. Kennedy. That was an admiralty case, though. Well, I don't know why it would be different in this context, Justice Kennedy. Certainly, the government says that these are all governed by forum selection clauses now. We think they are, too. So what you're really deciding in this case, if I could end where perhaps I began, is you're not deciding transportation in this case, because all transportation cases are now covered by conventions and forum selection clauses. What you're really deciding is what the law should be in the mainstream FSIA cases like finance, like contracts. That's why Gibson Dunn has filed a brief on behalf of a large hedge fund that says we do business all the time with foreign sovereigns, and we're very worried that if the Court adopts this gravamen based upon, we will not be able to enforce contracts and duties in this country that have given rise under negotiations in this country and then are breached abroad. Employment situations, like the hypothetical we give in our brief, where a United States citizen is hired as an engineer to go do oil and gas exploration and then something happens abroad. Those cases have always been brought in this country. And if this Court adopts the gravamen test, what you'll be saying is that courts now have some amorphous test that would seem, especially if there's only a single gravamen, that would seem to bounce all of these cases out of United States courts, which would be dramatically. Ginsburg. Well, suppose the Court simply said buying a ticket from an agent in the United States is not enough, period. We don't adopt any gravamen. The question is what does based on mean? And the Court could say based on is not based on. If all that happened in the United States is the purchase of the ticket, we don't have to buy any gravamen or anything else. Fisherman. Well, I think there's two reasons why you couldn't just limit it to that, Justice Ginsburg. First, as a legal matter, our claim depends on the duty that arose when that ticket's purchase was made. And I don't see any legal way to distinguish duties that arose in a ticket sale from other kinds of duties that arise in all kinds of other marketing and contract settings. And second of all, just as a matter of common sense, remember, let's go back to where we began. This is the commercial activity exception. If they weren't selling tickets, it wouldn't even be commercial to begin with. So it would be a highly odd holding to say the one thing that makes this commercial is what prevents it from being brought in the United States. What makes it commercial, it's a railroad doing the same thing a private railroad would do. It's in its business is operating a railroad. That's right, Justice Ginsburg. And if you want to ask the question in terms of whether a private company would be subject to jurisdiction under the same settings here, at least all you have to hold is that OBB should be in the same shoes as a private company. Now, we say in our brief and in the Gibson brief in more detail why due process wouldn't stand in the way of jurisdiction there. But if you have any doubt about that, you can note that OBB has made a personal jurisdiction argument in the district court that the district court never reached. And so that is available on remand. The only thing before this Court is sovereign immunity. And whether OBB is entitled to sovereign immunity for commercial acts in this country in the teeth of a congressional statute that says in the Declaration of Purpose in Section 1602 that foreign states doing commercial activities in this country should not be entitled to sovereign immunity, and then Section 1606 says what we want to do is help. Breyer, and we say, look, they're your exact words. Fisherman. Pardon me? Are they liable for activity that took place in this country? They are liable for the breach of the contract. The breach of the contract took place in Austria. End of case. Fisherman. No. Breyer. But why not? Fisherman. Because what the definition of in the United States, Justice Breyer, and this is sub D of 1603C, says that — I'm sorry, it's sub E of 1603C — says that in the United States is defined as substantial contact with the United States. And so that can occur in whole or in part in this country, and in part, I'm sorry, in part includes the ticket sale. Thank you, counsel. Mr. Basombrio, you have three minutes remaining. Thank you, Mr. Chief Justice, and may it please the Court. Much of our discussion today has been in separating the torts from the contractual claims here, in this case implied warranty claims. Let me tell you why I believe it's a bad idea to split claims on causes of action. This Court decided recently a case called Pimentel, in which the Republic of the Philippines had sovereign immunity, but there were also a number of other defendants that did not enjoy sovereign immunity. And this Court, taking into consideration important issues such as international comity, decided that under Rule 19, the entire lawsuit had to be dismissed, including as to non-sovereign entities, in order to give full effect to the sovereign immunity of the Republic of the Philippines. In light of that holding, it would make little sense that when the defendant has the right to invoke immunity, that we would split the causes of action so that some of them would proceed in the United States. Alito, are you suggesting that based upon determination is not done on a claim-by-claim basis? You look at the entire complaint? That's why. You find the gravamen of the entire complaint? Yes, exactly, Your Honor. And I've – and the circuit courts and the State courts have all understood what gravamen means. They know what it means. And if we just took anybody off the street here and we asked them, why is the Respondent suing, each person would say, because she was injured in a terrible accident in Austria. But what if the only claim were the breach of warranty claim? Then we would have to ask where did the breach occur. As in Justice Kagan's question, I would answer if the breach occurred in Austria, then the claim would arise in Austria. Now, the warranty, in terms of the duty of care, there is no duty of care until she arrives at the station and tries to board the train. And even if she didn't have a ticket at all, the record establishes that we would still owe her a duty of care. But what if she also had, in addition to the claim she's asserted, a conventional breach of contract claim? She said that when they – when she tried to get on the train, they said, no, your URAL passes and doesn't let you get on free. You have to pay an additional amount. That would have said – Alitoro, can we look to the gravamen of the whole thing and we say, well, the tort claims are in Austria and, therefore, she can't bring this breach of contract claim in the United States? Well, if she had been hurt, and in addition to that, they would have told her not to get on the train. Well, exactly what happened here, plus she said they made me pay extra. Then the gravamen would still be Austria, because that's where all those events took place. Thank you, counsel. The case is submitted. Thank you.